SLIP OPINION

Cite as 2014 Ark. App. 602

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-394

APRIL YOUNG

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND B.Y.,
MINOR CHILD

APPELLEES

Opinion Delivered November 5, 2014

APPEAL FROM THE JEFFERSON
COUNTY CIRCUIT COURT
[NO. JV-2011-502-6]

HONORABLE EARNEST E.
BROWN, JR., JUDGE

AFFIRMED; MOTION TO
WITHDRAW GRANTED

**ROBERT J. GLADWIN, Chief Judge**

This is a no-merit appeal from a termination-of-parental-rights order brought by

counsel for appellant April Young. On February 3, 2014, the Jefferson County Circuit Court

terminated Young's parental rights to her minor child, B.Y. (d/o/b July 4, 2003).[1] Young's

attorney has filed a motion to withdraw pursuant to *Linker-Flores v. Arkansas Department of*

*Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), asserting that there are no issues of

arguable merit to support the appeal. Young did not file pro se points for reversal, and neither

the Arkansas Department of Human Services (DHS) nor an attorney ad litem have filed briefs

---

[1]Young has two other children, V.Y. (d/o/b March 26, 2000) and L.Y. (d/o/b June 22, 2001), who were adjudicated dependent-neglected by agreement in this case and permanently placed in the custody of Kathy Cooper, a paternal aunt and intervenor. These children are not the subject of Young's appeal, and the circuit court's rulings and findings regarding them will not be addressed.

in this appeal. We grant counsel's motion to withdraw and affirm the order terminating appellant's parental rights.

DHS filed a petition for emergency custody and dependency-neglect on August 29, 2011, alleging in an attached affidavit that DHS had received a report through the hotline stating that B.Y. was diagnosed with failure to thrive on July 18, 2011, and admitted to Arkansas Children's Hospital that day weighing only 13.45 kilograms (about 30 pounds). B.Y. has cerebral palsy, hydrocephalus, a stent in his brain, and a seizure disorder; he is medically fragile and requires specialized care. The affidavit stated that B.Y. had been hospitalized on three prior occasions for failure to thrive and had gained weight very quickly during each hospitalization. When B.Y. was discharged in July 2011, his weight was 15 kilograms. As of August 25, 2011, B.Y.'s weight was 14.6 kilograms. According to the affidavit, B.Y.'s mother refused to enroll him in school, and his doctor suspected that he was not being adequately fed at home. After his discharge from the hospital in July 2011, B.Y.'s mother either canceled or was not at home during designated appointment times for his weekly weight checks; B.Y. was to have therapies at Jefferson Regional Medical Center, but this was not accomplished; B.Y. missed his orthopedic, cerebral palsy/rehab, neurology, and "MCHL" appointments.

The circuit court filed an ex parte order for emergency custody on August 29, 2011, finding probable cause to believe that B.Y. was dependent-neglected and finding it contrary to his welfare to remain with Young. After a hearing, a probable-cause order was filed on

September 7, 2011, finding that B.Y. should remain in DHS custody.[2]  The circuit court noted that Young failed to produce a sample for a drug screen and that, twice, she dropped the drug test in the toilet.  A hair-follicle test was ordered for Young.

An adjudication order was filed on October 12, 2011, finding B.Y. dependent-neglected, having been subjected to medical neglect by Young. An adjudication and disposition-review order was filed February 10, 2012, wherein  the circuit court found that B.Y. was in need of DHS services and should remain in DHS custody.  The goal of the case remained reunification with Young.  A June 5, 2012 review order reflects that it was in B.Y.'s best interest to remain in DHS custody.  The case plan also remained reunification with Young. The order stated that drug screens were entered and received into the record but did not reflect the results.

A permanency-planning order was filed August 10, 2012, wherein the circuit court held that the goal of the case continued to be reunification, finding that Young was complying with the case plan and making significant, measurable progress.  A fifteen-month permanency-planning order was filed November 21, 2012, noting that a counsel report contained a negative drug screen on Young.  The goal continued to be reunification of Young and B.Y., and B.Y. was to remain in DHS custody.

---

[2]B.Y. began residing at Easter Seals, a residential-care facility, at some point subsequent to this order, and testimony at the termination-of-parental-rights hearing suggested that he would remain at Easter Seals for at least another year.

A review order filed May 3, 2013, reflects that Young provided a negative drug screen, but Robert Stanley's[3] drug screen was positive for "Benzos". B.Y. was ordered to remain in DHS custody, and his placement in the residential-treatment facility met his special needs and best interests. Hair-follicle exams were ordered to be conducted on Young and Stanley. A review order filed May 24, 2013, found that the hair-follicle exams on Young and Stanley were positive for hydrocodone, oxycodone, and extended opiates. The order does not reflect Young's compliance level with the case plan.

A permanency-planning order was filed September 20, 2013, finding that B.Y. was in need of services and that return of custody to Young would be contrary to B.Y.'s welfare. The circuit court authorized a plan for adoption with DHS filing a petition for termination of parental rights. The circuit court found that Young did not comply with the case plan in that DHS could not contact Young for some time, she had failed to participate in counseling and other services, and she tested positive for cocaine on the day of the hearing. She contested the results.

A petition for termination of parental rights was filed October 15, 2013, pursuant to Arkansas Code Annotated section 9-27-341 (Supp. 2013), wherein DHS alleged that grounds included (a) B.Y. had been adjudicated to be dependent-neglected and had continued out of Young's custody for more than twelve months and, despite meaningful effort by DHS, the conditions that caused the removal had not been remedied by Young; (b) B.Y. had lived outside of Young's home for twelve months, and Young had willfully failed to provide

---

[3]Young married Robert Stanley during the pendency of this action.

significant material support in accordance with her means or to maintain meaningful contact with B.Y.; (c) the circuit court had found the juvenile or sibling dependent–neglected as a result of neglect or abuse that could endanger the life of the child which was perpetrated by the child's parent or parents; (d) other factors or issues arose subsequent to the filing of the original petition that demonstrated that return of B.Y. to Young's custody would be contrary to B.Y.'s health, safety, or welfare and that, despite the offer of appropriate family services, Young had manifested the incapacity or indifference to remedy the subsequent issues or factors.

An order terminating parental rights and granting DHS the power to consent to adoption was filed February 3, 2014, finding that, based on the testimony and evidence presented, the allegations in the petition had been proved by clear and convincing evidence. The testimony revealed that Young had married during the pendency of the action, and her husband had been recently incarcerated for what she thought was a probation violation. Latisha Young, the Family Service Worker for DHS, testified that a hair–follicle test on B.Y. was positive for cocaine, oxycodone, and hydrocodone on September 2, 2011. She further stated that Young disappeared at times throughout the case and that from June 2013 until September 2013, Young did not visit, did not participate, and did not submit to drug screens. Since then, Young had been inconsistent in visits and had not submitted to drug screens.

Young testified that she was on narcotic pain medication because of a recent injury to her back and neck. She provided prescriptions for hydrocodone and Xanax. She said that she obtained a wheelchair ramp after the caseworker's home visit and had obtained a hospital bed

for B.Y.'s use. She explained that she did not visit B.Y. more often because she was working to get her life in order so that she could bring him home. She expressed that she was all that B.Y. knew, and it was important that she stay in his life. She said that she would allow him to stay with Easter Seals if need be. She said that she did not work because her parents and her husband's parents paid her bills and supported her.

The termination order states that the circuit court specifically considered the likelihood that B.Y. would be adopted, mentioning the testimony of a staff member at Easter Seals who expressed an interest in adopting B.Y. and that there were eleven matches for B.Y. in the agency's adoption-matching system. The circuit court also considered the potential harm to the health and safety of B.Y. if he were returned to Young's custody.

The circuit court's order states as follows:

Further, DHS was unable to locate Ms. Young for several months and she failed to maintain contact with DHS. These findings are based on the evidence which shows that, despite the fact that this case has been ongoing for more than two years, the mother has failed to demonstrate stability in housing and employment, has failed to visit [B.Y.] or contact the department for months at a time, and that she is not currently prepared to take care of [B.Y.'s] special needs. All of these factors demonstrate an overall indifference towards remedying the problems that caused [B.Y.] to be removed from his mother's care. The Court finds the testimony of Anissa Ballew, Latisha Young, and Shana Fryar which supports the above described findings to be credible.

Young filed a notice of appeal on February 24, 2014. On August 14, 2014, Young's counsel filed a motion to withdraw as set forth above. Counsel contends that this appeal is without merit. Having carefully examined the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court

for no-merit appeals in termination cases,[4] and we conclude that the appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

PITTMAN and WYNNE, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

No response.

---

[4]In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. The petition must include an argument section listing all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explaining why each adverse ruling is not a meritorious ground for reversal. The petition must also include an abstract and addendum containing all rulings adverse to the appellant made at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i) (2014).